ROBERT SHARP, PLAINTIFF-APPELLANT, v. DEPARTMENT OF HUMAN SERVICES, ANN KLEIN, COMMISSIONER; DIVISION OF PUBLIC WELFARE, G. THOMAS RITI, DIRECTOR, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued March 16, 1982—Decided July 27, 1982.

Before Judges FRITZ, ARD and TRAUTWEIN.

*Donald Ackerman* argued the cause for appellant (Camden Regional Legal Services, Inc., attorneys; *Donald Ackerman* and *Stephen Latimer*, on the brief).

*David P. Schneider*, Deputy Attorney General, argued the cause for respondents (*Irwin I. Kimmelman*, Attorney General of New Jersey, attorney; *James R. Zazzali*, former Attorney General of New Jersey, *Andrea M. Silkowitz*, Deputy Attorney General, and *David P. Schneider*, on the brief).

The opinion of the court was delivered by

FRITZ, P.J.A.D.

Basically, plaintiff's appeal springs from his dissatisfaction with a general assistance grant under the General Public Assistance Law, *N.J.S.A.* 44:8–107 *et seq.* He complains not only with respect to the amount of the assistance but with particular respect to the refusal of the municipality to pay certain hospital bills the payment of which plaintiff claims is mandated by statute. A fair hearing initial decision by an administrative law judge vindicated plaintiff's position respecting the hospital costs, but the Director of the Division of Public Welfare, Department of Human Services, rejected this decision and affirmed the determination of the local welfare board. We affirm respecting the hospital bill but remand the matter for a new determination respecting monthly assistance allowance determinations.

We turn first to the remand. The General Public Assistance Law, *N.J.S.A.* 44:8–107 *et seq.*, is designed to provide assistance to eligible needy persons not otherwise provided for. Initial responsibility reposes in the municipalities which provide for funding by way of local appropriations supplemented by state aid. *Gilbert v. State*, 167 *N.J.Super.* 217, 220 (App.Div.1979). The amount of the general assistance payments is established by regulation, *N.J.A.C.* 10:85–4.1. Gloucester City, the municipality here involved, has provided municipal assistance to plaintiff

through vouchers whereby the municipality makes payment directly to third-party providers on behalf of the recipients. In the case of plaintiff, these payments on his behalf have from time to time, in a fashion stipulated by the parties in this case, amounted to less than that for which plaintiff was eligible under the cited regulation. The Director rejected plaintiff's demand for reimbursement of this difference on the theory that "the amount actually granted appeared to be mutually agreeable between the two parties commencing with the initial grant," relying upon *N.J.A.C.* 10:85–4.2(a)(4). This latter regulation provides that an amount lesser than that to which an individual is entitled may be paid in the event of a specific request by the recipient.

■ On this appeal the State commendably concedes that plaintiff received less than that to which he was entitled; that "the record demonstrates that the issue of 'agreement' was not squarely addressed at the hearing below" and that the substance of plaintiff's testimony reporting the denial of his specific request in April 1979 for the maximum grant "was not included in the Administrative Law Judge's factual findings and was not considered by the Director." The State suggests a remand "to the agency for the sole purpose of conducting a hearing on the issue of whether the appellant agreed to accept less than his full [general assistance] benefit entitlement for the months of March through October of 1979," and we fully concur for precisely the same reasons which motivated the State's recommendation.

■ We next consider the arguments of plaintiff directed to the refusal of the municipality to pay the hospital bill. At the outset it must be recognized that we are dealing here only with statutorily mandated state benefits. Accordingly, we are limited to an ascertainment of legislative intent as expressed in the statute, read in the light of its avowed purposes, but without regard for our own humanitarian instincts to the extent that those instincts do not find root in the legislative expression.

Relying on *Higdon v. Boning,* 121 *N.J.Super.* 276 (J.D.R.Ct. 1972), and the statement of *N.J.S.A.* 44:8–122 that a director of welfare shall render aid "necessary to the end that such person may not suffer unnecessarily, from cold, hunger, sickness . . .," plaintiff urges that the administrative law judge was correct in his determination that there is "a bottom level of medical assistance below which there was no discretion." Humanitarian instincts mentioned above and the obvious beneficent purposes of the General Public Assistance Law lend considerable appeal to this argument. But the Legislature has dealt separately and expressly with hospital payments by an amendment to the original act in *L.* 1950, *c.* 303. The statutes promulgated by this enactment, *N.J.S.A.* 44:8–146 through 152, clearly indicate beyond question the legislative intent to mandate payment of hospital costs only in counties of the first class. *N.J.S.A.* 44:8–146. A consistent regulation enacted by virtue of the authority of *N.J.S.A.* 44:8–150 implements this expressed intent. *N.J.A.C.* 10:85–5.2(a). Were plaintiff's contention that the general provisions of the act require all counties to pay for inpatient hospital costs representing necessary medical care a sound proposition, the amendment of *L.* 1950, *c.* 303, would have been superfluous in its entirety to say nothing of the superfluity of its limitation to counties of the first class. We may not indulge an interpretation that will render legislative action superfluous. *O'Rourke v. Board of Review,* 24 *N.J.* 607, 610–611 (1957). To the extent that *Higdon v. Boning, supra,* suggests to the contrary it is disapproved.

Plaintiff argues further that in the event mandated inpatient hospital cost payment is limited to counties of the first class, he is being denied the equal protection of the laws which is constitutionally guaranteed. Plaintiff fails to persuade us on this point as well.

Constitutional equal protection does not prohibit a difference in treatment between and among individuals in the area of social welfare. *Richardson v. Belcher,* 404 *U.S.* 78, 81, 92

*S.Ct.* 254, 257, 30 *L.Ed.2d* 231 (1971); *Moyer v. Board of Review,* 183 *N.J.Super.* 543 (App.Div.1982). It is necessary only that a classification advance legitimate legislative goals in a rational fashion. *Schweiker v. Wilson,* 450 *U.S.* 221, 234, 101 *S.Ct.* 1074, 1082, 67 L.Ed.2d 186 (1981). Even this qualification does not imply perfection in making the necessary classifications, which is thought to be "neither possible nor necessary." *Ibid.* Where, as here, a classification does not involve a "suspect" criteria, *i.e.,* one which poses an exceptional danger of misuse to unfairly burdened classes of persons, there is a presumption of validity whereby the burden is on the party attacking the classification to show that it lacks a rational relationship to a legitimate State objective. *Taxpayers Ass'n. of Weymouth Tp. v. Weymouth Tp.,* 80 *N.J.* 6, 37 (1976). The soundness of this view in New Jersey respecting the equal protection challenge is demonstrated by a recent restatement in the United States Supreme Court:

... Social and economic legislation ... that does not employ suspect classifications or impinge on fundamental rights must be upheld against equal protection attack when the legislative means are rationally related to a legitimate governmental purpose. *Schweiker v Wilson,* 450 US 221, 67 L Ed 2d 186, 101 S Ct 1074 (1981); *U.S. Railroad Retirement Board v Fritz,* 449 US 166, 66 L Ed 2d 368, 101 S Ct 453 (1980). Moreover, such legislation carries with it a presumption of rationality that can only be overcome by a clear showing of arbitrariness and irrationality. *Duke Power Co. v Carolina Environmental Study Group,* 438 US, [59] at 83, 57 L Ed 2d 595, 98 S Ct 2620 [2635]; *Usery v Turner Elkhorn Mining Co.,* 428 US, [1] at 15, 49 L Ed 2d 752, 96 S Ct 2882 [2892]. As the Court explained in *Vance v Bradley,* 440 US 93, 97, 59 L Ed 2d 171, 99 S Ct 939 [942-943] (1979), social and economic legislation is valid unless "the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [a court] can only conclude that the legislature's actions were irrational." This is a heavy burden, .... [*Hodel v. Indiana,* 452 *U.S.* 314, 331 [101 *S.Ct.* 2376, 2386, 69 *L.Ed.2d* 40] (1981); brackets around "a court" are in text.]

A court examining a challenge forwarded on the basis of a lack of equal protection must be particularly careful not to repeat the error made by the Federal District Court and criticized by the Supreme Court in *Hodel* of substituting its policy judgment for that of the legislative body.

■ Not only has plaintiff here failed to carry the heavy burden of persuading us of "a clear showing of arbitrariness and

irrationality," but our considered opinion is that vast differences exist as between municipalities in first class counties and those in other counties, the details respecting which are better known to the Legislature than to us, and that these differences might easily justify a distinction in treatment of the needy with regard to inpatient hospital care.

We affirm so much of the decision of the Director as concludes that inpatient hospitalization payments may not be mandated in this matter. We reverse that determination so far as it deals with the claim for reimbursement of the difference between assistance received and the maximum benefit and remand that issue for further proceedings consistent with all the foregoing. We do not retain jurisdiction.